[No. 4611.]

## QUINN ET AL. V. THE PEOPLE.

1. **Larceny by Bailee—Live Stock—Value.**

One convicted of the larceny of a cow under section 1256
Mills' Ann. Stats., making the conversion of property by a
bailee with intent to steal the same, larceny in the manner as
if the original taking had been felonious, is guilty of grand
larceny without regard to the value of the animal, and in such
a case it is not necessary to either allege or prove the value.

2. **Practice in Criminal Cases—Consolidation—Larceny.**

Where two defendants were each charged with the larceny
of the same two animals and were each separately indicted in
each case, the cases might, with the consent of the defendants,
be consolidated, notwithstanding two separate offenses were
charged, and it was not the duty of the court upon its own
motion to order the trials to be separated when he discovered
that two offenses were being proved.

3. **Same—Concurrent Sentences.**

Where one was convicted of two offenses at the same trial
and the sentence to the penitentiary in the second case runs
concurrently with the first, and there is sufficient evidence to
sustain the conviction in the first case, the appellate court will
not consider objections concerning the sufficiency of the evi-
dence in the second case.

4. **Larceny by Bailee—Intent.**

Where parties who took cattle for pasturage to be returned
to the owner in the fall cut out the brand of the owner and
placed their own upon an animal, intending to return the piece
of hide to the owner in the fall and tell him the animal had
died, and when the animal got fat intended to kill and sell it,
there was a sufficient conversion to constitute larceny.

*Error to the District Court of Weld County.*

Mr. H. E. CHURCHILL and Mr. W. A. HILL, for
plaintiffs in error.

Mr. N. C. MILLER, attorney general, for the people.

Mr. JUSTICE STEELE delivered the opinion of the court.

Four informations were filed in the district court of Weld county at the November term, 1902, of said court, against these defendants separately. One information against Quinn, No. 1002, and one against Marooney, No. 1004, charged in different counts the larceny of a heifer belonging to Robert A. Brown, the larceny as bailee of the same animal, the branding of it with a brand not the recorded brand of the owner, and the obliteration of a brand upon it, on the 8th day of July, 1902. One information against Quinn, No. 1003, and one against Marooney, No. 1005, charged in a similar manner the larceny of a heifer belonging to Samuel R. Faris, the felonious branding of the animal, and the larceny as bailee of the same animal, on the 8th day of July, 1902. The causes were consolidated for trial, the defendants consenting thereto. The defendants were found guilty under the count charging larceny as bailee in each of the informations, and sentenced to imprisonment in the penitentiary.

The case is brought here on error to test the regularity and correctness of the conviction and sentence.

The counts upon which the defendants were convicted allege: "That the said * * *, late of the county of Weld and state of Colorado, on the eighth day of July in the year of our Lord one thousand nine hundred and two, at and within the county aforesaid, then and there being the bailee of one head of neat cattle, to wit, one heifer, then and there being the personal goods and chattels of one * * *, · then and there being found, then and there wilfully, know-

ingly, unlawfully and feloniously did convert the
same to his own use with an intent to steal the same,
contrary," etc.      .

The facts proved upon the trial would have sus-
tained a conviction under section 4270, Mills' Anno-
tated Statutes, providing that, "If any person who
may receive from any owner or owners thereof any
animals, sheep, cattle or horses for the purpose of
herding or caring for the same, or any person who
may be employed in any manner about the herd-
ing or caring for any animals, sheep, cattle or
horses, shall sell, give away, kill, dispose of or con-
vert the same or any one or more thereof in any man-
ner to his own use, shall be ,deemed guilty of the
crime of embezzlement"; but the allegations of the
information are clearly insufficient to charge an
offense under that section.  The count was evidently
drawn under section 1256, Mills' Annotated Statutes:
"If any bailee, by finding or otherwise of any money,
bank bill, or note, or goods or chattels, shall convert
the same to his or her own use with an intent to steal
the same, he shall be deemed guilty of larceny in the
same manner as if the original taking had been felon-
ious, and on conviction thereof shall be punished ac-
cordingly."  It is not argued that this section is re-
pealed, in whole or in part, by section 4270, but it is
urged that in a prosecution under it for the conversion
of live stock, there must be both allegation and proof
of value.  At the time of the enactment of this statute,
and for some years thereafter, the punishment for
larceny depended in all cases upon the value of the
property stolen, but in 1877 a statute was enacted
(section 4281 Mills' Annotated Statutes) making the
stealing of cattle, horses, etc., grand larceny, without
regard to the value of the animal stolen.  This statute
was amended and re-enacted in 1891.  Laws of 1891,

130.    These statutes have been construed by this court in the cases of *Kollenberger v. People,* 9 Colo. 233, and *in re Pratt,* 19 Colo. 138; the court holding that the statutes defining larceny generally and the larceny of live stock were concurrent, and that the crime of larceny of live stock is indictable and punishable under either statute.    We think the language of the statute: "He shall be deemed guilty of larceny in the same manner as if the original taking had been felonious, and on conviction shall be punished accordingly," makes the conversion by a bailee with intent to steal the exact equivalent of a felonious stealing, taking and carrying away, and that any sentence that would be correct under an information charging simple larceny is equally correct under this statute concerning larceny by bailees.    Counsel cite the case of *State v. Hayes,* 13 Mont. 116, as an authority to the contrary.    We think it is not, for the reason that the Montana statute concerning larceny by bailees says: "He shall be guilty of grand or petit larceny, according to the amount of the property or value of the goods, chattels, or property converted, in the same manner as if the original taking had been felonious."    Under this statute, the court held, in the case cited, that the conversion of a horse by a bailee would be grand or petit larceny, depending on the value of the horse, notwithstanding section 78 of the same chapter made the stealing of a horse grand larceny without regard to its value.

It is urged that notwithstanding the defendants consented to the consolidation of the cases for trial, it became the duty of the trial court, upon its appearing that two separate offenses were being proved, of his own motion to order that the trials be separate. We do not think, under the authority of *Chesnut v. People,* 21 Colo. 512, that the cases were improperly

consolidated, and we do nct understand that after the jury was sworn for the trial of the two cases, the court could take one of the cases from the jury without the consent of the defendants. The court certainly did not err in not so interfering after the defendants had consented to the consolidation.

It is next contended that the evidence is not sufficient to warrant a conviction, particularly with reference to the Faris heifer. We shall not consider the objection concerning the sufficiency of the evidence in the cases in which the defendants were charged with the conversion of the Faris heifer, because the record shows that the defendants were sentenced to a term in the penitentiary of not less than eighteen months nor more than two years for the larceny of the Brown heifer, and that the sentence for the larceny of the Faris heifer runs concurrently with it. The evidence upon the trial abundantly sustained the conviction of larceny of the Brown heifer. This evidence is summarized by counsel for defendants as follows: "In the spring of 1902, Robert A. Brown sent six head of cattle to John Quinn, one of the defendants, to be herded. All of these animals were branded the day before they were sent 'B lazy S' on the right side of the neck. This brand was not a recorded brand, but was borrowed from a neighbor, and the animals were branded for the purpose of identification by Quinn. The understanding was, at the time the animals were sent to Quinn, that they were to be returned in the fall, and that the sum of 25 cents per head a month was to be paid for their pasturage. On the 8th day of July, 1902, Brown, the prosecuting witness, in company with several others, went to the ranch of Marooney (the other defendant) and found there the animal which the defendants were charged with having stolen. A piece of hide had been cut out or removed from the neck of this animal and

it was branded 'T lazy T' on the hip. The animal was then taken into Brown's possession. A short time after this the prosecuting witness, with his companions, met the two defendants south of the Marooney ranch, and Mr. Ireland asked the defendant Quinn if he knew who claimed the black heifer with the 'T lazy T' brand on her left hip. Quinn replied that he did not, but that Marooney claimed the brand. Thereupon, Marooney being questioned, stated that he owned the black heifer; that he had raised it and could prove it by Quinn. Quinn thereupon said, 'Yes, that's so, I guess you did raise her.' Afterwards Marooney stated to Mr. Ireland, in the presence of Sheriff Elliott, that he had roped the heifer and that Quinn had cut out the brand; that they intended to take this piece of skin, in the fall of the year, and show it to Brown and tell him the heifer was dead, and when the heifer got fat they were going to kill it and sell it and divide it.''

The last sentence is italicized by counsel, and it is argued that it shows merely an intent to convert the animal at some time in the future; we think it shows a conversion at that time.

We find no error in the record, and the judgment is therefore affirmed.

*Affirmed.*