No. 14,557.

STOWELL v. THE PEOPLE.
(90 P. [2d] 520)

Decided May 1, 1939.

Mr. ROBERT H. SCHAPER, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. HENRY E. LUTZ, Assistant, for the people.

*En Banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error, hereinafter referred to as defendant, was convicted of burglary and sentenced to a term of three to seven years in the penitentiary. To review that judgment he prosecutes this writ and asks that it be made a supersedeas. It appears from the record that he has already been incarcerated under the sentence, hence we elect to treat this application, which is fully briefed, as a final submission of the cause and dispose of it. The only question raised by the assignments, which we find it necessary to consider, may be thus stated: The information charging only burglary with force, was evidence that defendant entered by means of a key furnished him by the owner sufficient to support the charge?

The statute, so far as here applicable, reads: "Every person who shall willfully, maliciously and forcibly break and enter, or willfully and maliciously, without force, enter into any dwelling house, whether then occupied or not, * * * store-house, ware-house, * * * with intent to commit * * * felony or misdemeanor, * * * shall be deemed guilty of burglary, and, upon conviction thereof,

shall be punished by confinement in the penitentiary for a term not less than one year, nor more than ten years." '35 C. S. A. c. 48, §82.

The information charged that defendant "did then and there feloniously, willfully, maliciously, burglariously and forcibly break and enter * * * with intent the personal property, * * * to steal, take and carry away * * *."

Defendant was a freight conductor employed by the Rock Island railway. As such he was furnished with a "switch key" which he used in his work. It opened all switches and all depot and freight room doors on his division. There were no regulations governing its use. By means of it he entered the company's freight warehouse at Genoa and had taken therefrom two parcels of the value of $10, when he was arrested. The question here presented was raised by an instruction tendered and refused and by motion for a directed verdict at the close of all the evidence.

■ Had the switch key not been furnished defendant by the company, nor any authority given him under the terms of his employment to enter the building at the time and place in question, the evidence would have supported a conviction of burglary under the statute. For present purposes we assume, without deciding, that it would also have supported a conviction under this information. (But see *State v. McPherson*, 70 N. C. 239, 16 Am. Rep. 769). From the record it appears that defendant had a right to enter this warehouse at the time and in the manner he did, provided his intent in so doing was lawful. Hence this offense, if burglary, is raised to that grade solely by his unlawful intent. But intent alone is not always sufficient for that purpose. There is "no burglary, if the person entering has a right so to do, although he may intend to commit, and may actually commit, a felony, and although he may enter in such a way that there would be a breaking if he had no right to enter." 9 C. J. 20, p. 1016, §20. Considering the history

of the crime of burglary, and its evolution, this rule appears reasonable and necessary. The common-law crime was an offense against habitation. Its purpose was to give security to the home when it was presumably least protected. Essential elements thereof were an actual *breaking,* in the *night time,* with intent to commit a *felony.* It has been extended by statute in most states to entry in any way, into any kind of building, at any time, for any unlawful purpose. Under the rule of strict construction of statutes in derogation of the common law courts must necessarily be careful not to extend such acts beyond the clear intent of the Legislature. For instance, among the buildings enumerated in our statute are "schoolhouses." Hence, but for the rule above stated, a school teacher, using the key furnished her by the district to reopen the schoolhouse door immediately after locking it in the evening, for the purpose of taking (but not finding) a pencil belonging to one of her pupils, could be sent to the penitentiary.

The attorney general apparently admits the rule above stated, saying in his brief: "If the defendant had the right to use the key at the time and place, the burden would be upon him to establish it. Had he come forward with the defense to such an effect very possibly the contention would be correct." But his plea of not guilty raised every defense available and the people, in chief, established his lawful possession of the key and his right to enter with it, for a lawful purpose, at the time and place. It follows that the evidence before us establishes no greater offense than petit larceny.

The prejudice to defendant, by reason of the error noted, is difficult to estimate, but enough is disclosed by the record to make us pause. Defendant was 54 years old and had been in the employ of the company for 33 years with a clear record. He was not well at the time and had been drinking. He was picked up for a ride by a man called "Bill" whom he scarcely knew, was driven from his home in Goodland, Kansas, to Limon,

Colorado, and supplied on the way with whiskey. They stopped at Genoa on the return. There defendant entered the warehouse and took a carton of meat valued at $3.00 and an automobile battery valued at $7.00. He had no family and no automobile, hence no use for these articles. There is a strong suggestion of such an "entrapment" as would make the statute inapplicable. 9 C. J., p. 1018, §22. It is conceded defendant came in an automobile with "Bill," who drove away as soon as the arrest was made and was not apprehended. How anyone knew a crime was contemplated does not appear. Yet the warehouse was surrounded by special officers of the railway company and peace officers. There was considerable evidence as to defendant's mental condition, due both to illness and intoxication. What the jurors thought of it we know only from their general verdict, but that conviction hung by a thread is evident. The record recites that the jurors retired to consider at 3:50 P. M. September 17. At 11:00 A. M. September 18 they were recalled by the court because "they seemed to be a long time in reaching a verdict." Interrogated by the court it developed that they stood 3 to 9. They stated that they understood the instructions and needed no others. Asked if there was "a chance of reaching a unanimous verdict" the foreman answered, "Not at this time." Thereupon the court orally urged upon them the importance of agreement, if possible, reminded that they had nothing to do with the question of punishment, and directed them to return and deliberate further. Three hours later they were brought back and reported no change. The court then gave them an additional instruction, generally known in this state as the "third degree instruction," and they were returned to the jury room. Two hours and forty-five minutes later they were recalled and again interrogated. They now stood 10 to 2. Asked if there was a chance of agreement the foreman replied, "Very little." The jury was then polled on the question. One juror said, "I think we can," another not "unless we reach it in ten minutes,"

each of the others, "No chance." The court then said, "I will request you to return to the jury room and do one more thing, review the instructions in the case, look over the exhibits, and again talk over seriously the evidence presented by the various witnesses. The court wishes you to arrive at a definite verdict if possible." They were thereupon returned to the jury room and came in five hours later with a verdict of guilty as charged. In the light of that record the conclusion is inevitable that any error was probably prejudicial.

The motion for an instructed verdict should have been sustained. The judgment is accordingly reversed.

MR. JUSTICE FRANCIS E. BOUCK not participating.