No. 21784.

Horacio Angelo Macias *v.* The People of the
State of Colorado.
(421 P.2d 116)

Decided December 12, 1966

RICHARD D. GREENE, for plaintiff in error.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, GEORGE E. DEROOS, Assistant, for defendant in error.

*En Banc.*

PER CURIAM.

DEFENDANT in error, hereinafter referred to as defendant or as Macias, and one Elmer Gonzales were charged by direct information with the crimes of burglary (C.R.S. 1963, 40-3-5) and conspiracy to commit burglary (C.R.S. 1963, 40-7-35).

The situs of the crime was a telephone booth, the property of the Mountain States Telephone and Telegraph Company, in the City and County of Denver. Defendant and Gonzales were observed by detectives and police officers attempting to pry open a coin box of a pay telephone in a booth in the vicinity of East 8th Ave. and Downing St., in Denver. When the officers approached the two they fled and were not apprehended until eight days later.

A trial was had to a jury, and Macias was convicted on both counts. Gonzales was not tried with Macias, but appeared as a witness at the trial and attempted to assume full responsibility for the alleged crime. He is not a party to this writ of error. Upon denial of his motion

for a new trial, Macias was sentenced to the State Penitentiary, and to the judgment of conviction and the sentence thereon he prosecutes this writ of error.

In the writ of error we have chosen to address ourselves to the question whether a telephone booth may be the subject of burglary. In *Sanchez v. People,* 142 Colo. 58, 349 P.2d 561, we held that a telephone booth is a building within the meaning of the burglary statute, C.R.S. 1963, 40-3-5. Presumably, it was with this decision in mind that defendant was charged with and convicted of burglary.

Because the Sanchez case considered only whether a telephone booth was a building, the facts of this case and the law convince us that treatment of the other question is in order. In the Sanchez case the court overlooked the question of whether such a structure as an open telephone booth could be the subject of a burglary, primarily because it was not raised nor called to our attention. Neither was this question raised in the case at bar in the trial, in the motion for a new trial by counsel nor in defendant's brief in this court.

We now deem the point of such paramount importance that we are meeting the problem, even though not urged, on our own motion. On occasion we do consider questions which are not raised. It has not been done except in those cases in which this court has been satisfied that a seriously prejudicial error was made and that justice required such consideration. *Ruark v. People,* 157 Colo. 320, 402 P.2d 637; *Ellis v. People,* 114 Colo. 334, 164 P.2d 733; *Reppin v. People,* 95 Colo. 192, 34 P.2d 71. In our opinion this is just such a case calling for application of the exception to our established rule.

A telephone booth is, in a sense, a public building into which the public is invited to enter. Except when in use, the door of the booth stands open, or partially open. It is used for communication, and on occasion for shelter from the elements and private conferences. It contains a coin-operated telephone, a telephone direc-

**236**

tory, and sometimes a small seat. It has no rooms, apartments or compartments. In its more modern version, it consists largely of glass supported by a wood or metal framework, and its occupant of the moment is exposed to the gaze of all who happen to pass by. Of recent date booths which enclose the body from the waist up are in vogue.

■ Since time immemorial, burglary has included an element of actual or constructive trespass on the property of another with intent to commit some other crime once the intruder has effected an entry into the building of another. By statute, in Colorado, as elsewhere, the common law definition of burglary has been modified and broadened to include in some instances, and under some circumstances, a legal entry into the building of another, with felonious intent.

■ The Colorado burglary statute in existence at the time of the offense alleged in the information here, contains three situations under which the crime of burglary may be committed. The statute provides (1) that "Every person who shall *willfully* and *forcibly* break and enter or" (2) *willfully*, without force, enter any building, * * * with intent to commit * * *, larceny, or other felony or misdemeanor," or (3) "who being lawfully within any building or trailer, shall with like intent, either with or without force, enter into any room, apartment, or compartment of the same building, * * *, shall be deemed guilty of burglary, * * *." Situations (1) and (2) involve a direct trespass to the property with or without force, and without the consent, express or implied, of the owner or person in possession. But situation (3) contemplates an initial lawful entry into the property or premises with the express or implied invitation or consent of the owner, and after a lawful entry, a subsequent trespass by an unauthorized entry into any *room, apartment, or compartment of the same building*. The only situation under which defendant could be guilty under the burglary statute then in force is under situa-

tion (3) dealing with a lawful entry into the building. Since the public is invited to enter telephone booths, we find it difficult to contemplate or imagine an unlawful entry into the booth, that is, one involving an actual or constructive trespass.

One Colorado case decided in 1939 is almost directly in point. It is *Stowell v. People,* 104 Colo. 255, 90 P.2d 520. In that case the defendant had a key to the premises and therefore had the lawful right to enter the building that he was charged with burglarizing. In commenting on the precise question, this court said: "There is 'no burglary, if the person entering has a right so to do, although he may intend to commit, and may actually commit, a felony, and although he may enter in such a way that there would be a breaking if he had no right to enter.' 9 C.J.S. 20, p. 1016, §20."

In other states there is authority involving analogous situations. In *State v. Newbegin,* 25 Me. 500, it was held that where a store was open for business at night, and the defendant carefully lifted the latch of the unlocked door and entered the store by such door with intent to commit larceny, and did so, he was not guilty of burglary. Likewise, in *State v. Stephens,* 150 La. 944, 91 So. 349, 23 A.L.R. 286, it was held that entering an open store in the daytime with intent to steal is not burglary. A telephone booth is open for business 24 hours a day under a general invitation to the public to patronize the same.

■ The defendant cannot be guilty within the terms of the "third situation," since it is obvious that the telephone booth contains no room, apartment or compartment of the same building. The coin box of the telephone apparatus is not a "compartment." Webster's New International Dictionary, Second Edition, defines "compartment" as "One of the parts into which an enclosed portion of space is divided, as by partitions or lines." The word as used in the statute necessarily means some partitioned part "of the same building," such as a small

room, closet or other enclosed portion of the building. It does not mean a telephone coin box. The coin box might be a compartment of the telephone apparatus, but it is not a "compartment of the same building."

■ Thus an analysis of the statute, taking into account the three situations under which burglary can be committed, convinces us that the acts of the defendant did not fall within any one of the three. With the open booth and continuous invitation of entry to the public, he did not enter against the will of or without the consent of the owner; and once inside with the implied consent or invitation of the owner, there was no room, apartment or compartment *of the same building* to enter with or without force.

While we do not disagree with the conclusion reached in *Sanchez v. People, supra,* that a telephone booth is a building within the meaning of the statute, nevertheless we now hold that because of its nature it could not be the subject of a burglary.

■ We, therefore, conclude that defendant was not guilty of burglary as charged in the information, from which conclusion it necessarily follows that he was not guilty of conspiracy to commit burglary, and his motions for judgment of acquittal should have been sustained.

Accordingly, the judgment is reversed and remanded with directions to vacate the sentences and discharge the defendant.

Mr. Justice Frantz and Mr. Justice Schauer dissent.

Mr. Justice Frantz dissenting:

I would affirm for the reason that the defendant's acts come within the language of the burglary statute, which provides that "every person who shall * * * willfully, without force, enter any building * * * with intent to commit * * * larceny, or other felony or misdemeanor * * * shall be deemed guilty of burglary * * *." C.R.S. 1963, 40-3-5. Apparently the majority deems the con-

duct of the defendant and his companion to be not violative of this portion of the statute, and the majority apparently bases its view on the theory that the defendant at the time was an invitee and hence not an actual or constructive trespasser in entering the telephone booth.

From the evidence we know that the defendant and his companion entered the telephone booth with a crowbar with the intention of prying open the coin box and extracting therefrom whatever money was in it. Under these circumstances the defendant did not enjoy the status of an invitee; indeed, he was not even a licensee.

For one to be an invitee he must be on the premises for a purpose connected with the business in which the owner is engaged; there must be some mutuality of interest in the subject to which the visitor's business relates. A licensee goes upon the premises for his own convenience or pleasure and his presence there is at the owner's sufferance. *Mathias v. Denver Union Terminal,* 137 Colo. 224, 323 P.2d 624; *Boneau v. Swift & Co.,* 66 S.W.2d 172 (Mo. App.).

A telephone booth is a building constructed for a business purpose: to communicate by means of wire with some other person some distance from the booth. The person who uses the telephone booth for the purpose for which it is established is an invitee. A person who enters that booth for an unlawful purpose is not such invitee. If one were to seek shelter in inclement weather in a telephone booth, his relationship to the telephone company would be at best that of a mere licensee. One entering in such circumstances as the defendant is a trespasser. He cannot under any circumstances be considered a business visitor.

"Business visitors fall into two classes: First, those who enter upon the premises of another for a purpose connected with the business which the possessor conducts thereon; and, second, those who come upon the premises for a purpose connected with their own busi-

ness which is connected with any purpose, business or otherwise, for which the possessor uses the premises." *Kurre v. Graham Ship By Truck Co.,* 136 Kan. 356, 15 P.2d 463.

An illustration will show the majority doctrine to be reductio ad absurdum. Let us assume that the telephone and coin box had been negligently attached to the wall of the telephone booth. By reason of its insecure attachment, the use of the apparatus by a number of customers had caused it to work loose to the point that the vibration from the entry of the defendant and his companion caused it to fall upon the foot of the defendant, crushing many of its bones. Could he assert that he enjoyed the status of a business visitor to whom the telephone company owed the duty of not negligently injuring him? Would the telephone company be liable to him for negligence?

There is little in the case of *Stowell v. The People,* 104 Colo. 255, 90 P.2d 520, which affords the majority the support they appear to find in it. The court was dealing with a charge of breaking and entering and the decision is based on such charge. The present case is not one of breaking and entering; it falls within the language of the statute hereinabove first cited.

MR. JUSTICE SCHAUER joins in this dissent.